NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

14-260

STATE OF LOUISIANA

VERSUS

VERNON MULLINS

**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 70043
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

**JOHN E. CONERY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and John E. Conery, Judges.

**AFFIRMED.**

**Don M. Burkett**
**District Attorney**
**Anna L. Garcie**
**Assistant District Attorney**
**Post Office Box 1557**
**Many, Louisiana 71449**
**(318) 256-6246**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Brent A. Hawkins**
**Louisiana Appellate Project**
**Post Office Box 3752**
**Lake Charles, Louisiana 70602**
**(337) 502-5146**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Vernon Mullins**

**CONERY, Judge.**

Defendant, Vernon Mullins, was indicted November 14, 2011, for the aggravated rape of J.W.,[1] a violation of La.R.S. 14:42. A jury trial commenced September 4, 2013. On September 6, 2013, Defendant was found guilty as charged. Defendant was sentenced on December 2, 2013, to life imprisonment without the benefit of probation, parole, or suspension of sentence. Defendant has perfected a timely appeal. For the following reasons, we affirm Defendant's conviction for aggravated rape.

## FACTS

Between the dates of August 2010 and August 2011, Defendant had sexual intercourse with J.W., who was allegedly prevented from resisting because she suffers from a mental infirmity because of an IQ of seventy or below. Defendant was charged and convicted of aggravated rape.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

## ASSIGNMENTS OF ERROR

On appeal, Defendant asserts the following assignments of error:

ASSIGNMENT OF ERROR NO. 1: The trial court violated Appellant's constitutional rights to confront witnesses against him by allowing hearsay testimony and documents into evidence based on information from persons who were not subject to cross examination.

ASSIGNMENT OF ERROR NO. 2: The trial court erred by allowing expert testimony where the State failed to comply with La. C.E. 705(B).

---

[1] The victim's initials are used throughout this opinion to protect her identity, as required by La.R.S. 46:1844(W).

ASSIGNMENT OF ERROR NO. 3: The trial court abused its discretion by allowing a letter to be entered into evidence where the basis of the content of the letter was hearsay not subject to any exception.

## DISCUSSION

Defendant was charged with the aggravated rape of the victim, J.W.

Louisiana Revised Statutes 14:42, in pertinent part, defines the offense as:

> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> . . . .
>
> (6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.
>
> . . . .
>
> C. For purpose of this Section, the following words have the following meanings:
>
> . . . .
>
> (2) "Mental infirmity" means a person with an intelligence quotient of seventy or lower.

In this case, as provided in La.R.S. 14:42(C)(2), the State alleged, and had to prove beyond a reasonable doubt, that the victim had a mental infirmity with an IQ of seventy or below. Defendant contends that this element of the offense was not proven and thus his conviction should be vacated and this case remanded to the trial court. We disagree with Defendant and affirm his conviction.

**Assignments of Error**

All of Defendant's assignments of error relate to his claim that he was deprived of his constitutional rights of confrontation and cross-examination. In his

first assignment of error, Defendant argues that the trial court violated his constitutional right to confront his accusers. In order to meet its burden of proving that the victim's IQ was seventy or below, the State presented the testimony of Doctor Mark Vigen, accepted by the court as an expert in psychology with a subspecialty in forensic psychology. Defendant argues that Doctor Vigen did not perform the actual IQ tests given to the victim and that he should have been given the opportunity to cross-examine the technician, Jeri Jones, who actually administered the IQ tests. Defendant argues that the testimony of Doctor Vigen is hearsay and thus violates the Confrontation Clause. Defendant cites *Bullcoming v. New Mexico*, 131 S.Ct. 2705 (2011), for the proposition that "even information that is from a typically reliable source, while it may be deemed reliable, it must also [be] subjected to the 'crucible of cross-examination.'" Defendant further argues that, "the *Bullcoming* court in addressing the confrontation clause stated, '[a]ccordingly, the Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination.'"

Defendant argues, in accordance with *Bullcoming*, that the testimony of the technicians who actually administered the IQ tests to the victim must be presented at trial and subjected to confrontation and cross-examination. Doctor Vigen, however, gave direct evidence of his expert opinion at trial and his testimony was subject to extensive cross-examination as to the nature and reliability of the tests administered under his supervision. The test results were used solely for the purpose of explaining the assumptions on which his specific opinion rests. *Williams v. Illinois*, 132 S.Ct. 2221 (2012). The test results were given to Doctor Vigen, who ultimately interpreted the results and rendered his own expert opinion

in accordance with ordinary practice. Doctor Vigen then opined that the victim had an IQ of sixty-three. *See Id.*

> Louisiana Code of Evidence Article 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (2) The testimony is based on sufficient facts or data;
> (3) The testimony is the product of reliable principles and methods; and
> (4) The expert has reliably applied the principles and methods to the facts of the case.

Louisiana Code of Evidence Article 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

This court has consistently held that "[A]n expert witness may testify based on information obtained from others and the method of testing affects only the weight to be afforded the expert's conclusion." *State v. Brossette*, 634 So.2d 1309 (La.App. 3 Cir. 1994).

Doctor Vigen admittedly did not administer the IQ tests to the victim. He testified at trial and clarified on both direct and cross-examination that he met the victim before the tests were administered and spoke to her after the tests were administered. After reviewing the tests, Doctor Vigen formulated his own expert opinion. He appeared, testified, and was cross-examined extensively on the reliability and basis for his opinions. Louisiana legislation and jurisprudence allow for such expert testimony to occur. *See* La.Code Evid. arts. 702 & 703; *Brossette*, 634 So.2d 1309.

4

As the IQ of the victim is an element of the crime charged, Doctor Vigen's expert opinion aided the jury in arriving at its verdict. His opinion was based on sufficient facts, was based on reliable principles and methods, and those reliable principles and methods were applied to the facts of the case, with which he was very familiar. Thus, we find that Defendant's analysis of *Bullcoming* is inapplicable to the facts of this case and this assignment of error lacks merit.

In his second assignment of error, Defendant continues his argument that the trial court erred by allowing Doctor Vigen's expert testimony when the State failed to comply with La.Code Evid. art. 705(B). Louisiana Code of Evidence Article 705(B) provides, "**Criminal cases.** In a criminal case, every expert witness must state the facts upon which his opinion is based, provided, however, that with respect to evidence which would otherwise be inadmissible such basis shall only be elicited on cross-examination."

During direct examination at trial, the State questioned Doctor Vigen as to general procedures typical of IQ tests. Doctor Vigen went into great detail in his explanation. Following his explanation, the State asked, "And what was her full scale IQ if having taken this test and someone said what is [J.W.]'s IQ, what would it be Dr. Vigen?" Doctor Vigen replied, "sixty-three."

Following Doctor Vigen's pronouncement of his expert opinion regarding the particular victim's IQ in this case, the State asked whether Doctor Vigen had been present during the entire testing procedure administered to the victim. Doctor Vigen said that he had not been present during the testing procedure and did not administer the tests. However, he explained that he spoke with the victim before and after the tests. Doctor Vigen stated that a diagnostician who performs these tests full-time performed the tests on the victim and "the tests are very particular in

the sense that you have to follow a formal format. It has to be done the same way under the same conditions so that we know we're getting accurate results." Doctor Vigen further stated that the technician who performed the tests on the victim graded the results which were then "double checked by a second technician." Doctor Vigen explained that this procedure was typical of all IQ tests. On cross examination, the defense questioned Doctor Vigen as to who had actually performed the tests and focused on the facts specific to the testing of this particular victim.

In accordance with La.Code Evid. art. 705(B), on direct examination, the State solicited the information regarding the generic procedures of the tests upon which Doctor Vigen's opinion was based. After describing the procedures in detail, Doctor Vigen stated that in his opinion, the victim's IQ was sixty-three. In accordance with the article, the State did not question Doctor Vigen regarding the specific facts upon which his opinion was based once it was established that Doctor Vigen was not present for the entirety of the testing. On cross-examination, the defense questioned Doctor Vigen extensively on the types of tests used and the reliability of the IQ tests administered, again in accordance with La.Code Evid. art. 705(B). Doctor Vigen based his expert opinion on his training and experience and in so doing, he relied on the standard IQ tests administered by his technician in accordance with customary and ordinary procedures used in his profession. He went on to explain that his practice was analogous to that of other experts stating,

> Sort of like a radiologist. A radiologist doesn't really take the pictures of the lungs or actually operate the CAT scan but that data is done-- is collected by a specialist; a radiological technician and then the technician forwards the results to the radiologist. So that would be an analogy.

We find that Doctor Vigen's testimony was admissible under the Louisiana Code of Evidence and proper cross-examination was conducted under La.Code Evid. art. 705(B). Thus, this assignment of error lacks merit.

In his third assignment of error, Defendant asserts that the trial court erred in allowing the State to introduce Doctor Vigen's letter into evidence, as Defendant alleges that the letter is hearsay. We disagree with Defendant and conclude that the trial court did not err in allowing Doctor Vigen's letter to be admitted into evidence.

Doctor Vigen's letter stated, in pertinent part:

> [J.W.] earned a WAIS-IV Full Scale IQ of 63, which places her at the 1st percentile of measured intelligence in the Extremely Low range. Her Verbal Comprehension was measured at 66 and her Perceptual Reasoning at 73. These scores fall at the 1st and 4th percentile respectively in the Extremely Low and Borderline ranges. [J.W.]'s Working Memory score was also measured at 63, again the 1st percentile; her Processing speed was measured at 71 or at the 3rd percentile. [J.W.] reported that she gave her best effort on the tasks asked of her, which was confirmed by observation.

At trial, before Doctor Vigen's letter was offered into evidence, the State questioned Doctor Vigen as to his opinion regarding the victim's IQ, to which he responded, "sixty-three." Doctor Vigen's in court testimony was offered by the State to prove an element of the crime, the diminished capacity and consequent inability of the victim to lawfully consent to the sexual acts perpetrated on her by Defendant based on an IQ of seventy or below, in this case sixty-three. His opinion was then subjected to rigorous cross-examination.

"'Hearsay'" is a statement, **other than one made by the declarant while testifying at the present trial or hearing**, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C) (emphasis added). In this case, the statement was introduced while Doctor Vigen, the declarant, was testifying at trial.

7

As such, Doctor Vigen was subject to cross-examination regarding the contents of the letter, the testing procedures, and his opinion that the victim's IQ is sixty-three. Thus, by definition, Doctor Vigen's letter is not hearsay. This assignment of error lacks merit.

## CONCLUSION

We find that the trial court did not err in allowing Doctor Vigen to testify, to give his opinion as to the victim's IQ, and in allowing Doctor Vigen's letter to be admitted into evidence. We find that Defendant's assignments of error lack merit and affirm Defendant's conviction in its entirety.

**AFFIRMED.**

This opinion is **not designated for publication**. Uniform Rules—Courts of Appeal, Rules 2–16.3.